UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------x
JUAN F. RAMIREZ              :
        Plaintiff,          :
                            :
     v.                     :    CASE NO. 3:08cv906 (AWT)
                            :
DAVID STRANGE, ET AL.,      :
        Defendants.         :
-----------------------------x
```

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Juan Ramirez, currently incarcerated at Osborn
Correctional Institution ("Osborn"), commenced this civil rights
action *pro se* alleging, *inter alia,* that the conditions of
confinement at Osborn in August 2005 caused him to contract a
methicillin-resistant Staphylococcus aureus ("MRSA") infection.
He has sued Warden David Strange, Commissioner of Correction
Theresa Lantz and Department of Correction Director of
Facilities Management and Engineering David Batten.  Pending is
the defendants' motion for summary judgment.  For the reasons
that follow, the motion is being granted.

## I.    Facts[1]

In August 2005, David Strange was the Warden of Osborn,
Theresa Lantz was the Commissioner of the State of Connecticut
Department of Correction ("Department of Correction") and David
Batten was the Director of Facilities Management and Engineering

---

[1] The facts are taken from the defendants' Local Rule 56(a)1
Statement along with the attached exhibits and affidavits. (*See* Doc.
Nos. 26-2 through 26-8.) Local Rule 56(a)2 requires the party opposing

for the Department of Correction. On April 13, 2005, prison officials transferred plaintiff from Cheshire Correctional Institution to Osborn. Upon his transfer to Osborn, the plaintiff noticed that it was unclean.

Prison officials initially housed the plaintiff in H Block, but in May 2005, they transferred the plaintiff to D Block. The plaintiff remained in D Block until August 13, 2005, when officials transferred him to H Block.

On August 17, 2005, medical staff at Osborn examined the plaintiff due to his complaints of painful growths on his right elbow and right inner thigh. The nurse noted the plaintiff's temperature was 100 degrees, he was dizzy and weak and the abscesses on the plaintiff's right elbow and inner thigh were infected and leaking bloody fluid. The nurse assessed the condition as an alteration in skin integrity and notified Dr.

---

summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. *See* D. Conn. L. Civ. R. 56(a)2 & 56(a)3. On October 28, 2009, the defendants filed and served a Notice to Pro Se Litigant (Doc. No. 25) informing the plaintiff of his obligation to respond to the motion for summary judgment, the time limit for filing his response, and of the contents of a proper response.

The plaintiff has failed to file a Local Rule 56(a)2 Statement or any other opposition to the motion for summary judgment. Accordingly, the defendants' facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.").

Wright, who was the on-call physician that day.  Almost immediately, Dr. Wright ordered the nurse to: admit the plaintiff to Hospital III which was located in H Block, culture the drainage from the abscesses and apply hot soaks to the elbow and thigh.  Dr. Wright also prescribed an antibiotic and medication for pain.  The plaintiff's medical records reflect that in the early morning hours of August 18, 2005, he offered no complaints of pain and was resting quietly.  At 10:00 a.m., Dr. Omprakash discontinued the antibiotic and prescribed a different antibiotic, directed the nurse to apply warm soaks to the infected areas and ordered that the plaintiff be sent for an x-ray of his elbow to rule out bone spurs and fractures.  At 1:00 p.m., a nurse cultured the drainage from the plaintiff's elbow and sent the culture to University of Connecticut Health Center ("UCONN") for analysis.  The culture came back positive for MRSA. Later that day, the plaintiff had an allergic reaction to the antibiotic prescribed by Dr. Omprakash.  Dr. Ruiz, the physician on call that day, discontinued that medication and prescribed another antibiotic.

On August 19, 2005, a nurse changed the dressings on both the elbow and the thigh, and the plaintiff reported that he felt better and was able to eat all of his dinner.  On August 20, 2005, the plaintiff had no complaints; nurses changed his dressings, a large plug of pus loosened from his elbow and he

continued to receive the antibiotic prescribed by Dr. Ruiz.

On August 21, 2005, the plaintiff had no complaints; a nurse changed his dressings and noted a very small amount of drainage from the elbow and thigh. On August 22, 2005, the plaintiff indicated that he had slept well and had no complaints; Dr. Pillai noted the elbow was healing well, directed a nurse to schedule an appointment to excise the growth on the plaintiff's inner thigh and indicated that the plaintiff could be discharged to general population. At 1:00 p.m. on August 23, 2005, medical staff discharged the plaintiff to general population, where he was housed in Q Block. On August 30, 2005, a physician excised the growth on the plaintiff's inner thigh. The plaintiff's medical records reflect that since his discharge from the medical unit in August 2005, he has been free of active MRSA.

MRSA is a kind of staphylococcus aureus bacterium that is known to cause skin infections and is resistant to some antibiotics, including antibiotics called methicillin and oxacillin. Many individuals carry staph, including MRSA, in their noses or on their skin, but do not ever experience a skin infection or symptoms of illness. In order to contract a MRSA infection, a person must get the bacteria on his or her skin or in his or her nose. MRSA is spread by direct skin to skin contact or by contact with items that have been used by others who have MRSA on their skin, such as towels, athletic equipment,

dirty needles used for injections or tattoo equipment. MRSA infections can occur in prisons as well as outside of prisons.

A MRSA infection often appears spontaneously as a mild infection of the skin or soft tissue, such as a boil. Inmates with MRSA infections have complained of infected pimples, insect or spider bites or sores.

There is no medical evidence in the record to suggest that MRSA may be transmitted to a human being through contact with showers that have mold or mildew. Medical evidence does not demonstrate that lack of fresh air or exercise caused an increase in the level of MRSA in a prison population or contributed to the severity of the plaintiff's MRSA infection.

MRSA is difficult to contain in a confined setting, such as a prison, regardless of the number of inmates confined at the prison. Despite the increase in total inmate population at Osborn since 2005, the number of inmates infected with MRSA has remained basically unchanged.

In 1995 and 1996, the Department of Correction contracted with UCONN to provide treatment to Connecticut inmates through an organization called Correctional Managed Health Care. Since April 2001, Correctional Managed Health Care has established Infection Control Guidelines designed to minimize risks to the safety of its own staff, Department of Correction staff and inmates, including inmate isolation guidelines to be followed

when an inmate is suspected to be suffering from or has been diagnosed as suffering from highly transmissible pathogens. The infection control measures implemented by the Department of Correction and Correctional Managed Health Care in and after 2001 included education of inmates on the transmission, prevention, treatment and containment of an infection.

In July 2007, the Department of Correction adopted a formal infectious disease policy with regard to MRSA infections to minimize correctional staff and inmate exposure to MRSA. This policy was modeled after the clinical practice guidelines of the Federal Bureau of Prisons for management of MRSA infections. Since 2001, the medical treatment protocol for inmates with active infections, including MRSA has remained the same. The protocol requires medical staff to evaluate the infection, prescribe medication to treat the infection, isolate the inmate if the infection is actively draining and discharge the inmate to general population pursuant to an order of a physician.

## II. Legal Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The moving party may satisfy this burden by demonstrating the lack of evidence to

support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

A court must grant summary judgment if the pleadings, discovery materials on file and any affidavits show that there is no genuine issue as to any material fact. *See Miner v. Glen Falls*, 999 F.2d 655, 661 (2d Cir. 1993). A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248.

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert "the existence of some unspecified disputed material facts" or present "mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotation marks and citations omitted). The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. *See Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

The court resolves all ambiguities and "draw[s] all permissible factual inferences in favor of the" nonmoving party. *Patterson v. County of Oneida, NY*, 375 F.3d 206, 219 (2d Cir. 2004). If there is any evidence in the record from which a

reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004) (citations omitted).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment. See *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## III. Discussion

The defendants move for summary judgment on four grounds. They argue that the plaintiff has failed to allege facts to support an Eighth Amendment claim regarding conditions of confinement; (2) the plaintiff has failed to demonstrate the personal involvement of any defendant in the alleged unconstitutional conditions of confinement; (3) they are entitled to qualified immunity as to all claims; and (4) they cannot provide the plaintiff with the injunctive relief he seeks. The plaintiff has failed to file a response to the any of these arguments.

**A.  Conditions of Confinement - General**

The defendants argue that the plaintiff has failed to assert that any of the conditions under which he claims he was confined at Osborn denied him basic human needs in violation of the Eighth Amendment.  The Supreme Court has held that the Eighth Amendment "does not mandate comfortable prisons," and conditions that are "restrictive and even harsh" are "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981).  An inmate may prevail on an Eighth Amendment claim only if he can establish both an objective and a subjective element.  *See Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002).

The objective element is satisfied where the inmate shows that the condition or conditions caused "serious deprivation of basic human needs" or deprived him "of the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Supreme Court has defined human needs to include food, medical care, sanitation, clothing, habitable shelter, safety, warmth and exercise.  *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991)*; DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200 (1989); *Rhodes*, 452 U.S. at 347-48. "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient" to state a claim of unconstitutional conditions of confinement.

*Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing
*Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Inmates can also
satisfy the objective element if they can demonstrate that prison
officials exposed them to conditions that "pose an unreasonable
risk of serious damage to [their] future health." *Helling v
McKinney*, 509 U.S. 25, 35 (1993).

The subjective element requires the inmate to show that
correctional officials were aware of and disregarded a
substantial risk of serious harm. *Phelps*, 308 F.3d at 185-86.
Correctional officers "must both be aware of facts from which the
inference could be drawn that a substantial risk of serious harm
exists, and ... must also draw that inference." *Farmer v.
Brennan*, 511 U.S. 825, 837 (1994)).

The plaintiff's complaint includes a number of claims
regarding the conditions of confinement at Osborn beginning in
2005 and continuing through the filing of the complaint in June
2008. The plaintiff asserts that the facility is old and
overcrowded, lacks an adequate heating and cooling system and
contains asbestos. The plaintiff also contends that the water is
polluted with dangerous chemicals and the walls, ceilings and
floors of the showers are covered with mold and mildew.

The defendants have produced evidence demonstrating that,
although Osborn was built in the early 1960's, it meets the
requirements of the applicable building codes. The Heating

10

Ventilating and Air Conditioning ("HVAC") system has been
maintained on a regular basis.  Defendant Batten, who is the
Director of Facilities Management and Engineering for the
Department of Correction, avers that during 2005, all parts of
the various units that comprise the HVAC system were routinely
checked, cleaned, replaced as necessary, lubricated, repaired and
tested to ensure the that the system was operational.
Furthermore, there were no significant problems found during the
routine maintenance work on the HVAC system from 2005 to 2009.

In June 2005, the plaintiff sent a letter to Commissioner
Lantz regarding the hot temperatures and lack of air conditioning
at Osborn.  On August 15, 2005, defendant Batten informed the
plaintiff that Osborn had a heating system, but no cooling system
and Connecticut building codes did not require that Osborn be air
conditioned.  (*See* Compl. at 12.)  In response to the summer
heat, cell windows are opened and oscillating fans are placed in
common areas.  Some areas, including the Warden's Office and the
Medical Unit have window air conditioners.

The defendants have also submitted evidence as to the
potability of the water at Osborn.  Batten avers that water
samples are tested regularly by the State of Connecticut
Department of Public Health.  The tests revealed that there was
little or no evidence of Coliform bacteria, color, odor or
turbidity in the water, that the water's pH was between the lower

and upper acceptable limits and that levels of a variety of chemicals in the water were either at or below acceptable limits.

Correction Officer Michael Phillips avers that there are showers in all the housing blocks in which the plaintiff has been confined since he was transferred to Osborn in 2005. The showers are tiled from floor to ceiling and are equipped with exhaust fans and some have windows that may be opened to allow fresh air into the shower area. Inmates are employed to clean the showers and the bathrooms four times a day. These inmates receive information regarding the products to be used to clean the showers and instructions as to proper cleaning methods. In 2006, Department of Correction officials replaced bleach with Lemon All, a multipurpose germicidal detergent and disinfectant, as the product to be used by inmates to clean the showers. Lemon All is effective in eliminating viruses and bacteria.

Prison officials address concerns regarding air quality at Osborn immediately. When a complaint is made regarding air quality, tests are performed by Department of Correction officials as well as OSHA officials. In 2005, two complaints regarding air quality at Osborn were received by prison officials. Air quality tests revealed no violations or levels below Connecticut Occupational Safety and Health Division ("Conn-OSHA") exposure limits.

The plaintiff has submitted no factual affidavits or other

documentary evidence in support of his allegations.  He has also failed to refute the factual assertions included in the affidavits submitted by the defendants regarding the conditions of confinement at Osborn from 2005 to 2008.  The only claim made by the plaintiff with respect to the lack of air conditioning at Osborn is that he nearly fainted from the heat several times prior to June 16, 2005.  This allegation does not reflect an extreme deprivation of the need for habitable shelter, health or safety.  Thus, the plaintiff has failed to meet his burden of creating a genuine issue of fact as to whether the lack of air conditioning, functioning of the HVAC system, age of the facility, number of inmates confined at the facility, possible existence of asbestos, water quality and conditions of the showers constituted serious deprivations of his basis human needs at any point during the applicable time period.  Because the plaintiff has failed to produce evidence that would support a finding by a reasonable jury that he has met the objective prong of the Eighth Amendment standard, the defendants are entitled to summary judgment as to the conditions of confinement claims.

**B.    Conditions of Confinement - MRSA Infection**

In addition to the plaintiff's general conditions of confinement claims, he contends that the defendants subjected him to a serious risk of contracting a MRSA infection by subjecting him to certain conditions of confinement at Osborn.

Specifically, he asserts that he contracted a MRSA infection in August 2005 due to the inadequate cooling system, mold and mildew in the showers, overcrowding, lack of adequate exercise, his inability to clean his cell more than once a week and the failure of Osborn prison officials to isolate inmates with MRSA infections. The defendants argue that there is no evidence to support the plaintiff's claim that lack of air conditioning, exposure to mold and mildew, lack of exercise or lack of cleaning supplies more than once a week caused him to contract MRSA infection.

The defendants have submitted the affidavit of Dr. Edward Blanchette, who opines that in order to contract a MRSA infection, a person must get the bacteria on his or her skin or in his or her nose. See supra Part I. MRSA infections can occur not only in prison facilities, but also in any other situations where people are in close contact with each other and skin damage occurs. Dr. Blanchette avers that there is no medical evidence to suggest that MRSA may be transmitted to a human being through contact with showers that have mold or mildew. Furthermore, medical evidence does not support the plaintiff's claim that his lack of fresh air and exercise or a dirty cell caused his MRSA infection or contributed to the severity of his MRSA infection. Rather, an inmate's failure to wash his or her hands or employ good personal hygiene after engaging in direct skin to skin

contact or sharing towels or other equipment with another individual who might be  infected with MRSA can cause the inmate to contract a MRSA infection.

Dr. Blanchette avers that it is very difficult to control the occurrence of MRSA infections in a prison facility regardless of how many inmates might be confined in the facility.  The size of an inmate population is not necessarily linked to the number of cases of MRSA infection that might occur within that population.  In fact, the number of MRSA infections at Osborn decreased in 2008, even though the total inmate population increased by eighty-eight inmates.  The plaintiff has submitted no evidence to contradict the affidavit of Dr. Blanchette with respect to the conditions under which MRSA infections may be contracted.  Thus, the plaintiff has not created a genuine issue of fact as to whether overcrowding, showers with mildew and mold, lack of air conditioning or the inability to exercise, get fresh air or clean his cell more than once a week constituted conditions that subjected him to a serious risk of contracting a MRSA infection.  Accordingly, the plaintiff has not produced evidence that could support a finding by a reasonable jury that he has met the objective component of the Eighth Amendment standard with respect to these conditions.

The plaintiff also claims that he might have contracted MRSA from his constant contact with another unidentified inmate who

had MRSA, but who had not been isolated by Department of Correction officials. In his deposition, the plaintiff conceded that he is not an infectious disease specialist. Furthermore, the plaintiff has failed to produce any evidence to support his claim that he contracted MRSA from an inmate who was allegedly permitted to roam free at Osborn despite the fact that he was suffering from a MRSA infection. Even if the court were to assume that the plaintiff did contract MRSA from the infected inmate with whom he had been in close contact at Osborn, he has not produced evidence that the defendants were aware of this serious harm and were deliberately indifferent to or disregarded it.

At the time the plaintiff contracted a MRSA infection, Correctional Managed Health Care had established Infection Control Guidelines designed to minimize risks to the health and safety of its own staff, Department of Correction staff and inmates, including inmate isolation guidelines to be followed when a prison official suspected that the inmate suffered from or an inmate had been diagnosed as suffering from highly transmissible pathogens. The infection control measures implemented by the Department of Correction and Correctional Managed Health Care in and after 2001, included education of inmates on the transmission, prevention, treatment and containment of an infection and emphasized that hand washing and

16

good personal hygiene would help protect against the spread of infectious diseases. In addition, Correctional Managed Health Care promulgated Nursing Protocols to be followed in the assessment and treatment of various injuries, including alterations in skin integrity.

The plaintiff's medical records reflect that the infection control guidelines were followed by the nurses and doctors who assessed and treated him beginning on August 17, 2005. The nurse who initially examined the plaintiff, immediately contacted the physician on call once she suspected that he might have a skin infection. The physician then ordered that the plaintiff be sent to the hospital and placed in isolation. The physician also prescribed medications, including an antibiotic, and directed that a culture be done of the infected areas on plaintiff's body. The plaintiff responded to the medications and was released from the hospital within seven days from the date that he was admitted.

The plaintiff has presented no evidence to refute Dr. Blanchette's affidavit or his medical records regarding the treatment provided to him by medical personnel. Because the plaintiff has not produced evidence that could demonstrate that any of the defendants or medical personnel at Osborn were deliberately indifferent to his MRSA infection, he cannot meet the subjective prong of the Eighth Amendment standard. *See*

*Farmer*, 511 U.S. at 844-45 ("In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm was ultimately not avereted."); *Forbes v. Edgar*, 112 F.3d 262, 266-267 (7th Cir. 1997) (noting that even if infections occur due to isolated mistakes, prison medical personnel should not be held liable under the Eighth Amendment's deliberate indifference standard if they followed infectious disease prevention and control procedures). Therefore, the motion for summary judgment is being granted as to this claim because the defendants were not deliberately indifferent to a serious risk of the plaintiff or other inmates contracting MRSA as a result of the conditions of confinement at Osborn.

### C. Deliberate Indifference to Medical Needs

The plaintiff contends that he did not receive timely medical care in connection with his MRSA infection. The defendants argue that medical personnel at Osborn were not deliberately indifferent to the plaintiff's MRSA infection. The court agrees.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on such a claim, a plaintiff must provide evidence of sufficiently harmful acts or omissions

18

and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. *See id.* at 104-06.

There are both subjective and objective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995). Objectively, the plaintiff must show that he suffered from a serious medical need. A serious medical need has been defined by the Second Circuit as an urgent medical condition that causes death, degeneration or extreme pain. *See id.* (citation omitted). The Second Circuit also considers whether the medical condition affects an inmate's daily activities in a significant manner and whether a reasonable physician would consider the condition or injury to be important and to require treatment. *See Chance*, 143 F.3d at 702. Subjectively, the plaintiff must show that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The defendants concede that a MRSA infection is a serious medical need. They contend that medical personnel at Osborn were not deliberately indifferent to the plaintiff's serious medical need. The court notes that the plaintiff has not named any Osborn medical personnel as defendants and has not alleged that any of the named defendants were aware of his MRSA infection or

19

responsible for or involved in providing medical treatment for the MRSA infection. Thus, the plaintiff has failed to allege that any of the defendants was deliberately indifferent to his serious medical needs.

Even if the plaintiff had named Osborn medical personnel as defendants, the documentary evidence submitted by the defendants shows that medical personnel at Osborn responded quickly to the plaintiff's complaints regarding the infections on his elbow and thigh and provided him with immediate and effective treatment for the infections. See supra Part I. The plaintiff's unsupported assertion regarding untimely medical treatment is not sufficient to create a genuine issue of fact in light of the defendants' undisputed medical evidence to the contrary. Therefore, the plaintiff cannot meet the deliberate indifference prong of the Eighth Amendment standard. The motion for summary judgment is being granted as to this claim because no defendant was deliberately indifferent to the plaintiff's MRSA infection.

### D. Deliberate Indifference to a Risk of Future Harm

The plaintiff asserts that the Department of Correction's Infectious Disease Control policy is insufficient to protect him and other inmates at Osborn from contracting infectious diseases in the future. The defendants argue that the plaintiff has failed to provide any evidence to support conclusory allegations of future harm.

A prisoner may state a deliberate indifference claim under the Eighth Amendment even if he suffers no present injury, so long as he demonstrates that the challenged deprivation "pose[s] an unreasonable risk of serious damage to his future health." *Helling*, 509 U.S. at 35. Based on the record here, no reasonable jury could find that the plaintiff faces an unreasonable risk of serious damage to his future health from MRSA or any other contagious disease.

Dr. Blanchette avers that infectious disease guidelines were in effect as of 2001 and that in 2007 the Department of Correction adopted formal MRSA policies, modeled after the Federal Bureau of Prison's MRSA Guidelines, to minimize the risks of exposure to MRSA by Department of Correction and Correctional Managed Health Care employees and inmates. The plaintiff offers no evidence that these guidelines have not been followed by Osborn correctional and medical personnel. Although the plaintiff has remained at Osborn since his transfer there in April 2005, he has not been diagnosed with an active MRSA infection or any other contagious disease since August 17, 2005. In addition, the number of MRSA infections decreased in 2008, despite an increase in the population at Osborn. Accordingly, no reasonable jury could conclude, based on the record here, that the plaintiff faces an unreasonable risk of future injury. The motion for summary judgment is being granted as to any claim of

deliberate indifference to a risk of future harm of exposure to contagious diseases, including MRSA.

**E.   Remaining Conditions of Confinement Claims**

The plaintiff alleges that "a high concentration of old paint and raw iron" exist at Osborn.  (Compl. at 9.)  The plaintiff also alleges that "sewage overflows" occurred at Osborn.  (Compl. at 7.)

The plaintiff has not offered any evidence to support a finding that these conditions existed at Osborn or that these conditions existed within the housing units he was confined in from 2005 to 2008.  Furthermore, the plaintiff did not assert that he suffered from any symptoms as a result of his alleged exposure to these conditions.  The court concludes that the plaintiff's allegations regarding conditions at Osborn are insufficient to survive summary judgment with respect to the objective element of the Eighth Amendment standard.  *See Wesolowski v. Kamas*, 590 F. Supp. 2d 431, 434-35 (W.D.N.Y. 2008) ("plaintiff's complaints, concerning the prison's failure to provide him with specific cleaning supplies or the magnitude of its response to an overflowed toilet elsewhere on the cell block, represent minor inconveniences of prison life which 'are part of the penalty that criminal offenders pay for their offenses against society.') (citation omitted); *Mele v. Connecticut*, No. 3:06CV1741 (SRU), 2007 WL 445488, *2 (D. Conn. Feb. 9, 2007)

(dismissing claim that prison officials' failure to remove
asbestos and lead paint may affect inmate's future health because
inmate failed to specifically allege that he had been "exposed to
friable asbestos or flaking lead paint during his confinement at
Osborn"); *Mabery v. Keane*, No. 95 Civ. 1093, 1998 WL 148386, at
*8 (S.D.N.Y. Mar. 30, 1998) (allegations of unsanitary conditions
of confinement, including nearby running of raw sewage requiring
inmates to breathe the fumes associated with the burning of that
sewage, found insufficient to meet objective prong of Eighth
Amendment standard).

Even assuming the conditions alleged by the plaintiff
existed at Osborn from 2005 to 2008 and were sufficiently
serious, there is no evidence that any of the defendants had
knowledge of the existence of old paint, raw iron or "sewage
overflows." The only conditions at Osborn the plaintiff claims
he made the defendants aware of were an inadequate heating and
cooling system, mold and mildew in the showers due to lack of
ventilation, the existence of asbestos and the age of the
buildings. (*See* Compl. at 6 and Attached Exs.) If the
defendants were not aware of the alleged existence of old paint,
raw iron and overflowing sewage, they could not be deliberately
indifferent to the harm these conditions might have posed to the
plaintiff. *See Mitchell v. Keane*, 974 F. Supp. 332, 334
(S.D.N.Y. 1997) (denying motion to amend on ground that

allegation involving sewage dripping from cell ceiling failed to state a claim for a violation of prisoner's Eighth Amendment rights because proposed amended complaint did not include allegation that a correctional official or officer was aware of the condition in prisoner's cell), *aff'd* 175 F.3d 1008 (2d Cir. 1999). Accordingly, the court concludes that plaintiff has failed to allege facts to satisfy either the objective or subjective prong of the Eighth Amendment standard as to the claims involving the existence of old paint, raw iron and overflowing sewage at Osborn from 2005 to 2008. The claims are being dismissed for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (court may dismiss at any time a claim upon which relief may not be granted).

## IV. Conclusion

The Motion for Summary Judgment [**Doc. No. 26**] is hereby **GRANTED** as to the claim that the conditions of confinement at Osborn violated the plaintiff's Eighth Amendment rights, that the defendants were deliberately indifferent to the plaintiff's medical needs and that the defendants were deliberately indifferent to a risk of future harm of exposure to contagious diseases, including MRSA. The claims as to the existence of old paint, raw iron and overflowing sewage at Osborn from 2005 to 2008 are hereby **DISMISSED** pursuant to

24

28 U.S.C. § 1915(e)(2)(B)(ii). The court declines to exercise supplemental jurisdiction over any state law claims against the defendants. *See* 28 U.S.C. § 1367(c)(3); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (where all federal claims have been dismissed, the court may decline to exercise supplemental jurisdiction over state law claims).

The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED** at Hartford, Connecticut this 21st day of September, 2010.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge